**The People of the State of Illinois, Defendant in Error, v. A. William Benson and Irvin Hutchinson, Plaintiffs in Error.**

### Gen. No. 29,451.

1. HOMICIDE—*degree of proof of assault with deadly weapon consisting of reckless automobile driving.*   Although the Supreme Court has held that where the conduct of the driver of an automobile was so reckless, wanton and wilful as to show an utter disregard for the safety of pedestrians a conviction for assault with a deadly weapon would be warranted, the proof must show the guilt of the defendant beyond a reasonable doubt, before a conviction will be sustained.

2. HOMICIDE—*when assault with deadly weapon by reckless automobile driving established by evidence.*   A conviction for an assault with a deadly weapon—an automobile—was sustained as to one of two defendants, where the defendant whose conviction was sustained was operating his Ford automobile with one hand, and going at a speed of between twenty-five and thirty miles an hour, the other arm being around the young woman sitting at his side, and where a few minutes before the accident another automobile had passed, and the driver of the Ford car speeded up and passed the

other car and in passing struck and overturned it, injuring the occupants, although such car had pulled out to permit the Ford car to pass.

3. Homicide—*insufficiency of evidence of assault with deadly weapon.* The conviction of the companion of the driver of an automobile for an assault with a deadly weapon was set aside under the rule that the guilt of the defendant must be established beyond a reasonable doubt, although the conviction of the driver was sustained, where there was no evidence that such companion in any way directed the driving of the car in question, except the slight circumstance that he stated after the accident that he thought it would be fun to pass the other automobile.

Thomson, J., dissenting.

Error by defendants to the Criminal Court of Cook county; the Hon. Marcus Kavanagh, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Affirmed as to Benson and reversed as to Hutchinson. Opinion filed June 17, 1925.

William P. Churchill and P. A. Rattray, for plaintiffs in error; Henry L. Cowlin, of counsel.

Robert E. Crowe, State's Attorney, Edward E. Wilson and Clarence Nelson, Asst. State's Attorneys, for defendant in error.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

A. William Benson and Irvin Hutchinson were indicted for an assault with a deadly weapon—an automobile,—a jury was waived and after a hearing the court found both defendants guilty. Benson was sentenced to six months in the county jail and to pay a fine of $50, and Hutchinson was sentenced to three months in the county jail and a fine of $10 imposed.

Convictions for manslaughter, where the death was caused by the reckless driving of an automobile, have been upheld by the Supreme Court and in such cases it has been held that no intent to kill or malice need be shown. *People v. Falkovitch,* 280 Ill. 321; *People v. Camberis,* 297 Ill. 456; *People v. Schwartz,* 298 Ill.

218. And it has also been held that where the conduct of the driver of an automobile was so ''reckless, wanton and wilful as to show an utter disregard for the safety of pedestrians, a conviction for assault to commit a bodily injury would be warranted.'' *People v. Anderson,* 310 Ill. 389; *People v. Clink,* 216 Ill. App. 357; *People v. Adams,* 289 Ill. 339; *Aiken v. Holyoke St. R. Co.,* 184 Mass. 269; *State v. Schutte,* 87 N. J. L. 15; *People v. Anderson,* 229 Ill. App. 315. Obviously before such conviction will be sustained, the proof must show the guilt of the defendants beyond a reasonable doubt.

The record discloses that about 8:30 o'clock, Sunday morning, October 14, 1923, the defendants, two young men about twenty-one years of age, together with two young women, left Chicago in a Ford coupé for Crystal Lake, Illinois; that about 9:30 o'clock they had reached a point about two miles beyond Desplaines and were traveling northwesterly on the Rand road toward Crystal Lake. At that time the defendant Benson was driving. One of the young women sat next to him and Hutchinson, the other defendant, was sitting on the right-hand side of the seat. The other young woman was sitting on Hutchinson's lap. There was but one seat in the Ford coupé. Behind the Ford, traveling in the same direction, was a Chevrolet touring car, driven by Leo T. Addison, who was taking his family, consisting of himself, wife and two children and his friends, Mr. and Mrs. Maierhofer to Crystal Lake. Addison was driving the Chevrolet and Maierhofer was sitting on the front seat by him, the women and children seem to have been on the rear seat of the automobile. Both cars were traveling about twenty-five or thirty miles per hour. The Chevrolet passed the Ford, and when they had proceeded a distance of about two city blocks Addison heard the honk of the Ford automobile, indicating that it was about to pass him and Addison pulled toward the right for this purpose. The occupants of the Chevrolet car

testified that as the Ford was passing it struck the Chevrolet and turned it completely over, injuring the occupants of the Chevrolet. The Ford car continued on for a distance of about a block. It then stopped and the defendants and the two young women went back to see what damage had been done. In the meantime other citizens had gathered around and lifted the Chevrolet so that the persons could get out from under it. Some of them were severely injured and Addison, the driver, was bleeding from injuries he had received. There is no conflict in the evidence up to this point, except that the occupants of the Ford testified that the Ford car did not strike the Chevrolet when passing it and that they did not know that any accident or injury had befallen the Chevrolet or its occupants until one of the young women, who was sitting on Hutchinson's lap, looked back and saw that the Chevrolet had turned over.

Addison, who was driving the Chevrolet, testified that when he passed the Ford car on Rand road the driver of the car "was driving with his arm around one of the girls and that the other boy was holding the other girl on his lap." That after having gone what would be the length of two city blocks, he got a horn from somebody to pass and he pulled over to give them the road; that "as they came opposite to me I could see them heading right for me. They hit my front wheel which locked the driving power of my car"; that the Chevrolet then turned over; that the Ford was going between twenty-five and thirty miles an hour.

George Maierhofer, who was on the seat with Addison, testified "the driver had his arm around the girl." The defendants and the two women denied that the driver had his arm around one of the girls when they passed the Chevrolet.

After the defendants rested, Addison testified in rebuttal that three or four days after the accident he went to Crystal Lake and interviewed the defendants;

that he talked with the defendant Hutchinson and that Hutchinson said he thought it would be fun to pass us, but he didn't know he was so close when he hit us; that he then went to Benson's home at Crystal Lake and that Benson said, "I didn't know they were so close as to hit us." There is further evidence in the record, but we have stated the substance of all that is material.

The record discloses that after the evidence was all in and during the argument of counsel, reference was made to the case of *People v. Schwartz*, 298 Ill. 218, as well as other cases and that the *Schwartz* case was tried before the judge who presided at the trial of the instant case. In that case a judgment of manslaughter was upheld by the Supreme Court. The evidence showed that about 9:30 o'clock of the evening of November 30, the defendant, a licensed taxicab driver, while driving at about twenty miles per hour in Ashland avenue, a short distance north of 19th street, struck two young women who were crossing the street about 100 feet north of 19th street—not at a street crossing,—injuring one of them so badly that she died within a few hours. After referring to that case, the learned trial judge said: "There isn't any doubt as to the guilt of the driver here. This driver Benson is guilty. There is altogether too much of this reckless driving by these young bloods along the streets of the cities and out in the country endangering the lives of the people on the streets." He then stated there was some doubt of Hutchinson's guilt, but that he was in general a part of the group with Benson and afterwards held them both guilty, and said speaking of both: "They had these two girls with them. They were showing off before the girls." He further stated that an automobile was a dangerous instrument with a powerful engine and that: "It is not the fault of either of these two young bloods that the people in that automobile were not killed.  *  *  *

I don't know whether the other defendant (Hutchinson) is guilty or not.''

We think the evidence is insufficient to warrant the finding that Hutchinson was guilty beyond a reasonable doubt. He was sitting on the seat, but there is no evidence that he in any way directed the driving of the machine at the time in question, except the slight circumstance testified to by Addison which occurred three or four days after the accident, when Hutchinson told him that he thought it would be fun to pass the Chevrolet. Upon consideration of all the evidence, we think it is insufficient so far as the defendant, Hutchinson, is concerned. We are of the opinion, however, that the court was warranted in finding Benson guilty. The evidence tended to show that he was driving in a reckless manner without any regard for the rights of other people traveling on Rand road; that he was driving with one hand, the other arm being around the young woman sitting by his side; that a few minutes before the accident the Chevrolet had passed the Ford; that the driver then speeded up and passed the Chevrolet. And upon a consideration of all the evidence in the record, we are of the opinion that the learned trial judge was warranted in finding that the defendant was reckless, negligent and driving without any regard for the rights of others. We think the facts in the record show more wanton negligence than the facts in the *Schwartz* case where a conviction for manslaughter was upheld.

The judgment of the criminal court of Cook county as to the defendant Benson is affirmed and as to the defendant Hutchinson it is reversed.

*Reversed as to Hutchinson and affirmed as to Benson.*

TAYLOR, J., concurs.

MR. JUSTICE THOMSON, dissenting: In my opinion the judgment appealed from in this case should be reversed, not only as to the defendant Hutchinson but as to the defendant Benson, as well. In my opinion there would never have been any thought of charg-

ing these defendants with such a degree of negligence as to make it criminal and support a complaint charging assault with a deadly weapon, if it had not been for the contention that the driver was attempting to guide his car along the road with one hand while his arm was around the girl sitting next to him. As I read this record there is little to substantiate any such fact, except that the other girl was sitting on Hutchinson's lap,—there being but one seat in the car and four people riding in it. The prosecuting witness did testify on direct examination that "there was one of the boys driving with his arm around one of the girls," but in my opinion that testimony was shown not to be very reliable on cross-examination. This witness was asked whether the arm he saw around the girl was in a shirt sleeve or a coat sleeve and he said he didn't know. He was asked whether it was the driver's right arm or left arm and he didn't know. He was further asked whether the arm was around the girl's waist or neck and he could not say. There was some further testimony by witnesses for the prosecution tending to show that Benson had his arm around the girl next to him, but it was not of a very positive or satisfactory nature. Benson denied that he had his arm around the girl and testified that he was driving with both hands and the girl testified to the same effect.

Even if the evidence seemed to be sufficiently strong on this point to establish beyond a reasonable doubt that Benson was driving with one hand, I am of the opinion that, on the whole record, a case of criminal negligence was not made out. There was no other vehicle within the immediate vicinity of these two cars; the Ford was passing the Chevrolet, and as Benson steered back toward the right side of the road, his car apparently came into contact with the left front corner of the Chevrolet. That the part of the Ford which came into contact with the Chevrolet must have been the rear part is evidenced by the fact that the occu-

pants of the Ford, according to the testimony of all of them, would never have known anything had happened if the girl who was sitting on Hutchinson's lap had not had a view to the rear and saw the Chevrolet turn over. As Benson drove the Ford past the Chevrolet his view to the right was necessarily interfered with materially by the girl who was sitting on Hutchinson's lap. In my opinion that furnishes the explanation of how this accident came about. Benson not having a clear view in that direction, assumed that he was entirely past the Chevrolet, when, in fact, he was not, and he turned over too soon. From the testimony of some of the witnesses for the prosecution, they would seem to give the impression that Benson deliberately steered his car into the Chevrolet. In my opinion there is no reasonable basis for any such contention. Such a course would have involved a greater danger to himself and the occupants of his car than to those in the Chevrolet. As I view this evidence the collision that occurred was an accident. That Benson was guilty of negligence in causing the accident is apparent. That his negligence was shown to be of such a character as to amount to criminal negligence, beyond a reasonable doubt, I think the record fails to establish. In that respect it seems to me the finding of the trial court was against the manifest weight of the evidence.