# Order

**Michigan Supreme Court**
**Lansing, Michigan**

February 2, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

139276

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

SAMMIE RAY BAILEY, JR.,
      Defendant-Appellant.

SC: 139276
COA: 278411
Kent CC: 06-006768-FC

_____/

On order of the Court, the application for leave to appeal the May 21, 2009 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we VACATE that portion of the Court of Appeals judgment addressing harmless error, and we REMAND this case to the Court of Appeals for reconsideration of its harmless error analysis for constitutional error under the holding in *Neder v United States*, 527 US 1, 15; 119 S Ct 1827; 144 L Ed 2d 35 (1999). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

We do not retain jurisdiction.

KELLY, C.J. (*concurring*).

The Court of Appeals opinion in this case, which was unpublished, persuasively explained in part II (A) and (B) its rationale for finding that the jury instructions were in error:

## A. Self-Defense Elements

Bailey asserts that the trial court's "erroneous, muddled, and confusing" self-defense instructions violated his right to due process by lessening the prosecutor's burden of proof.

> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily

> harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat. [*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002).]

In addition to these general concepts, the Supreme Court emphasized in *Riddle* that "a person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*. (emphasis in original). "[A]s long as he honestly and reasonably believes that it is necessary to exercise deadly force in self-defense, the actor's failure to retreat is never a consideration," and "he may stand his ground and meet force with force." *Id*.

In contrast, when a defendant "is voluntarily engaged in mutual, nondeadly combat that escalates into sudden deadly violence," the defendant must retreat. *Riddle*, *supra* at 131-132. The Supreme Court in *Riddle* explained further the following situation in which an affirmative obligation to retreat exists:

> One who was the aggressor in a chance-medley (an ordinary fist fight, or other nondeadly encounter), or who culpably entered into such an engagement, finds that his adversary has suddenly and unexpectedly changed the nature of the contest and is resorting to deadly force. *This . . . is the only type of situation which requires 'retreat to the wall.'* Such a defender, not being entirely free from fault, must not resort to deadly force if there is any other reasonable method of saving himself. Hence if a reasonable avenue of escape is available to him he must take it *unless he is in his 'castle'* at the time. [*Id*. at 133 (citation omitted, emphasis in original).]

"Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Elkhoja*, 251 Mich App 417, 443; 651 NW2d 408 (2002), vac'd in part on other grounds 467 Mich 916 (2003).

Bailey submits that the following instructions of the trial court regarding the concept of an aggressor effectively eliminated his claim of self-defense:

> You've also got to remember that a person forfeits self-defense, even if they'd otherwise have it, have the right to it, if they were the first to use deadly force, that's the

ultimate bootstrapping. You can't use deadly force, and then have someone respond to deadly force and say, Now I can use deadly force to defend myself. You just can't do that.

> *Nor can a person claim self-defense if they provoked the other person into using deadly force. They deliberately provoke them into using deadly force, and then say, Well, now that they are, I can respond to it.*

> *Nor can a person claim self-defense if what they do is confront someone, intending, by their mere presence, to provoke that person into doing something, and then take advantage of it. That is all making the person who is claiming self-defense the aggressor. You have to be without fault. Without fault means that you can't be the first one to use, and you can't provoke the other person into doing it, and you can't set up a situation where what you mean for them to do is to take the first step so that you are then claiming to take the second step.* [Emphasis supplied.]

In *People v Heflin*, 434 Mich 482, 509 (opinion by Riley, C.J.); 456 NW2d 10 (1990), the Supreme Court explained that "an act committed in self-defense but with excessive force or in which defendant was the initial aggressor does not meet the elements of lawful self-defense." In *People v Van Horn (On Remand)*, 64 Mich App 112, 115; 235 NW2d 80 (1975), this Court quoted with approval from *Wharton's Criminal Law & Procedure* (Anderson ed), § 229, p 501: "It is generally held that the aggressor is the one who first does acts of such nature as would ordinarily lead to a deadly combat or as would put the other person involved in fear of death or serious bodily injury."

We find that the trial court improperly stated the law regarding the concept of an "aggressor," particularly as to defendant Bailey, when he instructed the jury in this regard. No legal authority in Michigan supports that one becomes an aggressor merely by presenting oneself to the victim on a public street, even if armed. In *People v Bright*, 50 Mich App 401, 405; 213 NW2d 279 (1973), this Court held that "merely possessing a loaded weapon does not take away the claim of self-defense from an individual." In *People v Townes*, 391 Mich 578, 586-592; 218 NW2d 136 (1974), our Supreme Court rejected the notion that the defendant's trespass at a tire store and his attempted provocation of a store employee precluded him from arguing self-defense. Although the defendant shared some degree of "fault" for the encounter, he was nevertheless entitled to claim self-defense.

Similarly, in *Riddle*, the Supreme Court explained that even one who is "an aggressor in a chance-medley" may be entitled to use deadly force, depending on the circumstances. *Riddle*, *supra* at 133. The Supreme Court stated that "where a defendant 'invites trouble' or meets nonimminent force with deadly force, his failure to pursue an available, safe avenue of escape might properly be brought to the attention of the factfinder as a factor in determining whether the defendant acted in reasonable self-defense." *Id*. at 127. "Inviting trouble," according to *Riddle*, includes "voluntarily participating in mutual nondeadly combat." *Id*. at 142. Further, it is generally accepted that

> [o]ne may, without forfeiting his right to defend himself against attack, seek an interview with another in a peaceable manner, for the purpose of demanding an explanation of offensive words or conduct or demanding the settlement of a claim, and according to many decisions, he need not go in a friendly spirit. He may, it seems, assert self-defense as excuse or justification, even though he arms himself before seeking the interview. [26 Am Jur, Homicide, § 131].

Standing alone, Bailey's armed presence on the street does not amount to either fault or provocation. Contrary to the trial court's charge, "confront[ing] someone, intending, by their mere presence" to provoke an affray does not eliminate one's potential opportunity to invoke a self-defense. Rather, Bailey's actions amount to conduct that a jury must evaluate, along with the totality of the surrounding circumstances, in deciding whether he "started an assault … with deadly force [or] with a dangerous or deadly weapon." CJI2d 7.18. The trial court's "mere presence" instruction additionally contradicts CJI2d 7.19, "Nondeadly Aggressor Assaulted with Deadly Force":

> A defendant who (assaults someone else with fists or a weapon that is not deadly / insults someone with words / trespasses on someone else's property / tries to take someone else's property in a nonviolent way) does not lose all right to self-defense. If someone else assaults him with deadly force, the defendant may act in self-defense, but only if he retreats if it is safe to do so.

Furthermore, no record evidence supports that Bailey "intended by his mere presence" to incite or provoke the victim. Construed in the light most favorable to the prosecution, the record reveals that Bailey did not know the victim, and agreed to accompany Lambeth so that Lambeth could confront the victim. Contrary to the trial court's instruction, Bailey's mere

presence at this confrontation, without more, did not automatically render him an "aggressor," and did not eliminate his ability to claim self-defense.

### B. Self-Defense Burden of Proof

Bailey avers that the trial court's instructions "lowered the prosecution's burden of disproving self defense and defense of another" because the court repeatedly referred to self-defense as a "limited" defense and failed to specifically instruct the jury that the prosecution bore the burden of proving that Bailey and Lambeth did not act in self-defense.

The trial court's instructions regarding the prosecutor's burden of disproving self-defense appear in the following excerpt:

> The first thing you have to keep in mind is that the lack of justification has to be proven here. The defendant doesn't have to prove justification. The evidence has to establish the lack of justification. Now, that's an awkward way of saying things. It is talking about proving a negative, which is technically correct, but hard to talk about. Let's turn it around and talk about it positively.

> Since it has got to be proven beyond a reasonable doubt, just like you contributed to the murder, that a person did not kill with justification, I'm going to state it this way: If there is a realistic possibility, based upon the evidence presented here, that one or both of the defendants acted in either self-defense or defense of another person, then we don't have a murder, if there was a realistic possibility. If, on the other hand, it's not a realistic possibility, no possibility at all, or even just a mere possibility, just a possibility, not a realistic possibility, then murder is back on the table, because then the thing which would eliminate it; justification, doesn't exist.

We conclude that the trial court erred by failing to properly instruct the jury regarding the applicable burden of proof. The trial court's instruction that "[t]he defendant doesn't have to prove justification" is correct. Had the trial court followed this statement with language similar to that contained in CJI2d 7.20, the jury would have been more completely and properly instructed. Instead, the trial court continued, "The evidence has to establish the lack of justification. Now, that's an awkward way of saying things. It is talking about proving a negative, which is technically correct, but hard to talk about." During the trial court's ensuing effort to clarify the law, the court entirely neglected to inform the jurors that the prosecutor bore the burden to disprove Bailey's and Lambeth's self-defense

claims. [*People v Bailey*, unpublished opinion per curiam of the Court of Appeals (on reconsideration), issued May 21, 2009 (Docket No. 278411).]

YOUNG, J. (*dissenting*).

I dissent from the order in this case and instead would affirm the decision of the Court of Appeals. The jury instructions properly set forth the correct standards for self-defense and provocation, and I would affirm the defendant's convictions on that basis.

Defendant shot and killed Keith Hoffman, a local drug dealer who had recently stolen money and jewelry from defendant. At issue during trial was whether defendant acted in self-defense. After a jury convicted defendant of second-degree murder and felony-firearm, defendant appealed, claiming that his jury instructions were constitutionally deficient. The Court of Appeals agreed that the jury instructions were erroneous, but concluded that any error was harmless because it "f[ound] it clear beyond a reasonable doubt that a properly instructed jury would have rendered the same verdict."[1]

The challenged instructions, when considered in their entirety,[2] are not erroneous. The Court of Appeals determined that the jury instructions failed on two grounds: in providing erroneous instructions on provocation as negating self-defense and in lowering the prosecution's burden of proof on self defense. I will consider each of these claims of error seriatim.

## PROVOCATION

In *People v Riddle*, this Court articulated when provocation precludes asserting the justification of self-defense: "the cardinal rule, applicable to all claims of self-defense, is that the killing of another person is justifiable homicide if, under all the circumstances, the defendant honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force."[3] In discussing the rule, this Court expressly addressed provocation: "For example, where a defendant 'invites trouble'. . . his failure to pursue an available, safe avenue of escape might properly be brought to the attention of the factfinder as a factor in determining whether the defendant acted in reasonable self-defense."[4]

---

[1] *People v Bailey*, unpublished opinion per curiam of the Court of Appeals, May 21, 2009 (Docket No. 278411).

[2] See *People v Dye*, 356 Mich 271, 279 (1959).

[3] *People v Riddle*, 467 Mich 116, 142 (2002).

[4] *Id*., at 127.

Here, the trial court instructed the jury that "a person forfeits self-defense, even if they'd otherwise have it, have that right to it, if they were the first to use deadly force. . . . Nor can a person claim self-defense if they provoked the other person into using deadly force." The trial court continued:

> Nor can a person claim self-defense if what they do is confront someone, intending, by their mere presence, to provoke that person into doing something, and then take advantage of it. You have to be without fault. Without fault means that you can't be the first one to use, and you can't provoke the other person into doing it, and you can't set up a situation where what you mean for them to do is to take the first step so that you are then claiming to take the second step.

The Court of Appeals claims that the trial court's instructions were erroneous: "Contrary to the trial court's charge, 'confront[ing] someone, intending, by their mere presence' to provoke an affray does not eliminate one's potential opportunity to invoke a self-defense."

However, the trial court concluded its discussion of self-defense by indicating that the defendant

> must fear, actually fear and reasonably fear, that then and there you are about to be killed or seriously injured, or that someone else is. You've got to actually and reasonably believe that the use of deadly force in response, is the only way to fend off that imminent threat. . . . And, the defendant, to have the benefit of the defense, cannot have been the aggressor, which means the first to use deadly force, a person who provoked it, or one who did something to set up a situation where deadly force ends up getting used, and then they in turn get to respond to it and bootstrap into a claim of defense.

When considered in their entirety, the trial court's instructions to the jury indicated that provocation negates a claim of self-defense. The phrase "by their mere presence" specifically refers to a person "confront[ing] someone" with the intention of "provok[ing]" violence. In some circumstances, a person's mere presence *may* be sufficiently provocative to eliminate a claim of self-defense. However, the trial court's instruction did not, as the Court of Appeals suggests, indicate that a person's "mere presence" *necessarily* "eliminate[s] one's potential opportunity to invoke a self-defense." Ultimately, the trial court's instruction, when considered in its entirety, correctly identified the appropriate legal standard.

## BURDEN OF PROOF

The Court of Appeals also determined that the trial court erred in articulating the burden of proof associated with a claim of self-defense. This Court's precedent holds that "once the issue of self-defense is injected and evidentially supported, '[t]he burden of proof to exclude the possibility that the killing was done in self-defense, rests on the prosecution.'"[5]

Here, the trial court instructed the jury as follows:

The first thing you have to keep in mind is that the *lack of justification has to be proven here*. The defendant doesn't have to prove justification. The evidence has to establish the lack of justification. Now, that's an awkward way of saying things. It is talking about proving a negative, which is technically correct, but hard to talk about. Let's turn it around and talk about it positively.

Since it has got to be proven *beyond a reasonable doubt*, just like you contributed to the murder, *that a person did not kill with justification*, I'm going to state it this way: If there is a realistic possibility, based upon the evidence presented here, that one or both of the defendants acted in either self-defense or defense of another, then we don't have a murder, if there was a realistic possibility. If, on the other hand, it's not a realistic possibility, no possibility at all, or even just a mere possibility, just a possibility, not a realistic possibility, then murder is back on the table, because then the thing which would eliminate it[,] justification, doesn't exist.[6]

The trial court's instructions made it clear that the *lack* of justification needs to be proven beyond a reasonable doubt, which is the correct burden of proof. While the trial court's attempt at "turn[ing] it around and talk[ing] about [justification] positively" was inartful, it did not do anything but equate the presence of a "realistic possibility" of justification with the failure to prove lack of justification beyond a reasonable doubt. Accordingly, the trial court correctly stated that the prosecutor bears the burden of disproving justification beyond a reasonable doubt.

---

[5] *People v Jackson*, 390 Mich 621, 626 (1973), quoting *People v Stallworth*, 364 Mich 528, 535 (1961).

[6] Emphasis added.

CONCLUSION

The trial court did not err in instructing the jury on self defense. Accordingly, the Court of Appeals need not have engaged in a harmless error analysis. Therefore, I would affirm the result of the Court of Appeals on the alternative grounds that no error occurred.

WEAVER, J., joins the statement of YOUNG, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 2, 2010

Clerk

p0126